# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4077

_____

Richard M. Elbert,

*Plaintiff - Appellant,*

v.

Gilbert Carter, Police Officer; Francis Collins, Police Officer; Andrew Dorothy, Sgt.; Erik Enderlin, Police Officer; Charles Evans, Police Officer; William Hooley, Police Officer; Caleb Lenz, Sgt.; Rebecca Mills, Sgt.; William Nauyok, Police Officer; James Manley, Police Officer; Christopher Onik, Police Officer; Jason Rusley, Police Officer; Marcus Smith, Police Officer; Alan Whaley, Police Officer; Alvin Brooks, Commissioner; Michael Rader, Commissioner; Angela Wasson-Hunt, Commissioner; Sly James, Commissioner; David Kenner, Secretary; Robert Richardson, Fire Marshall; Joe Williamson, Code Enforcement Manager,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2018
Filed: September 10, 2018

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In a previous lawsuit filed in 2011, Richard Elbert sued the City of Kansas City, Missouri, the Kansas City Board of Police Commissioners, and various Kansas City employees, including police officers, in federal court. Elbert brought several federal constitutional claims under 42 U.S.C. § 1983, alleging violations of the First and Fourth Amendments, as incorporated against the States. He also alleged violations of state law, and sought the return of property under Federal Rule of Civil Procedure 64.

Many of Elbert's claims were based on an episode at the Kansas City Apollo Country Club. Elbert was the manager of the club. The country club had been the subject of citizen complaints and investigations by the city. On December 10, 2011, Kansas City police officers executing a search warrant effected a no-knock forceful entry into the club.

Elbert alleged that a group of Kansas City police officers—identified as John Doe defendants in his complaint—battered the front door of the establishment, threw a "flash bang grenade" through the partially shattered door, and entered the club with weapons drawn. He asserted that the John Does pointed weapons at his friends and associates, and demanded that they get down on the ground. According to Elbert, the officers placed him in restraints, and Detective Robert Gibbs questioned him, first at the scene and later at police headquarters. Among other claims, Elbert alleged that Detective Gibbs violated the Fourth Amendment by using excessive force and falsely arresting and imprisoning him.

In March 2013, the district court[1] dismissed Elbert's First Amendment claims for failure to state a claim. The court also denied Elbert's motion for return of property, reasoning that Elbert had not availed himself of the post-deprivation remedy of replevin under Missouri law.

The court allowed Elbert's Fourth Amendment claims to proceed and directed the parties to submit a scheduling order. The parties agreed that the deadline for Elbert to amend his pleadings would be October 31, 2014. Elbert then moved for leave to amend his pleadings on December 23, 2014, nearly two months after the deadline. In his proposed amended complaint, Elbert sought to substitute twenty-one named individual defendants, mostly Kansas City police officers, for the twenty-one John Doe defendants listed in his second amended complaint. The court denied Elbert's motion to amend as untimely.

Before final judgment in the first action, Elbert filed the present suit in Missouri state court. He named as defendants several people, including Detective Gibbs and the Missouri Board of Police Commissioners, who were also defendants in the first lawsuit. Elbert also sued sixteen Kansas City police officers, all of whom he had unsuccessfully sought to substitute for the John Doe defendants in the first lawsuit. The defendants removed the case to federal court. Elbert's claims in this action, as in the first action, arise from the events occurring at the Apollo Country Club on December 10, 2011.

Just over two weeks after the case was removed, the district court *sua sponte* dismissed Counts 1, 2, 3, 5, and 9 of Elbert's eight-count complaint. In Counts 1, 2, and 5 of the complaint, Elbert alleged that the Board of Police Commissioners had failed to train and properly supervise the defendant police officers, and had failed to

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

establish proper policies. In Count 3, Elbert alleged that the police officers and other city officials had violated his right to freedom of assembly under the First Amendment by dispersing guests during the December 10 search. Finally, in Count 9, Elbert sought replevin from the police officers and other city officials. The district court reasoned that Elbert had brought the same claims in the first federal action, and the court had dismissed them for failure to state a claim, so they should be summarily dismissed in the second action. The court then stayed further proceedings pending resolution of motions for summary judgment on the remaining claims in the first action.

On January 15, 2016, the district court granted summary judgment for the defendants on Elbert's remaining federal claims in the first action, and declined to exercise supplemental jurisdiction over his state claims. This court affirmed the judgment, including the district court's denial of leave to amend the second amended complaint. *See Elbert v. City of Kansas City*, 667 F. App'x 881, 882-83 (8th Cir. 2016) (per curiam).

After entering final judgment in the first action, the district court dismissed all remaining counts in the second action—Counts 4, 6, 7, and 8—reasoning that they were barred under the doctrine of *res judicata*. In Count 8, Elbert alleged that Detective Gibbs, who was also a defendant in the first action, had negligently supervised the police officers in their execution of the search warrant on December 10, 2011. In Counts 4, 6, and 7, Elbert challenged the actions of the police officers who were identified as John Doe defendants in the first action but never added as parties in that case. In Count 4, Elbert alleged that several city employees, including the police officers, had violated his equal protection rights by interfering with his ability to host private parties. Count 6 alleged a state law conversion claim against all defendants. Count 7 asserted that several city employees, including the police officers, violated Elbert's due process rights.

-4-

In dismissing these claims based on *res judicata*, the district court reasoned that they were "based on the same events" as the first federal action. The court recognized that several of Elbert's claims involved police officers who were not defendants in the first action, but concluded that these officers were in "privity" with the defendants in the first action. Elbert appeals the district court's dismissal of his claims.

Under federal common law, the doctrine of *res judicata*, or claim preclusion, applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The district court correctly ruled that *res judicata* bars Counts 1, 2, 5, and 8, because they involve claims against the same parties from the first action, and Elbert could have brought the new claims in the first action.

In the remaining counts, Elbert brought claims arising from the same events at the country club, but against new defendants who were not parties to the first action. The new defendants are police officers whom Elbert attempted to add as defendants in the first case when he filed his untimely motion to amend the second amended complaint. The district court reasoned that these remaining counts were barred by *res judicata* because the new police officer defendants were in "privity" with other police officers who were defendants in the first action. Elbert disputes this conclusion.

The term "privity" once referred to specific substantive legal relationships, but it has "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008). "[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). As Judge Goodrich wrote in *Bruszewski v. United States*, 181 F.2d 419 (3d Cir. 1950), "privity" is "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Id.* at 423 (concurring opinion).

This court long ago recognized that claim preclusion is not limited to cases involving the same parties or parties who are in traditional "privity" with defendants in a first action. In *Fowler v. Wolff*, 479 F.2d 338 (8th Cir. 1973) (per curiam), we affirmed the dismissal of a plaintiff's claims against two new defendants in a second action where "the relationship of [the two new defendants] to the parties sued in the [previous] action is so close that their addition cannot change the fact that this present action is repetitious and barred by res judicata." *Id.* at 340. *Fowler* involved a civil rights action against three Nebraska officials concerning a dispute over parole. After the first action was dismissed on the merits, the plaintiff brought a second action against two of the same defendants and two different Nebraska officials. Although the later action involved new individual defendants and a new claim that was not discussed by the district court in the previous action, this court concluded that claim preclusion applied. *Id.*

Fowler applied *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972), where the Third Circuit ruled that claim preclusion barred a plaintiff, whose claim of civil conspiracy against one set of defendants in a first action was dismissed on the merits, from bringing a second action alleging the same conspiracy against additional defendants who were not parties to the first. Although the two sets of defendants

were not in traditional "privity" with each other, the court in *Gambocz* reasoned that "the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action." *Id*. at 842.

Because the new defendants in *Fowler* and *Gambocz* were not parties in the first action, their invocation of claim preclusion was "nonmutual." One leading commentator, after surveying the law in this area, concluded that the one "cogent argument in favor of nonmutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4464.1, at 702 (3d ed. 2017).

Since *Fowler*, other circuits have followed this approach and concurred with Professor Cooper's observation that "[t]he best probable outcome" is a "limited rule" that permits nonmutual claim preclusion "if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance." *Id.* § 4464.1, at 709; *see Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988). The First Circuit, summarizing the authorities, explained that "claim preclusion applies if the new defendant is 'closely related to a defendant from the original action—who was not named in the previous law suit,' not merely when the two defendants are in privity." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) (quoting *Negron-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008)). These decisions reject the "contention that nonparty defendants to an initial action can invoke claim preclusion as a defense in a later suit only if they can show that the nonparty defendant was in privity with the initial defendant." *Id.*

The rationale of *Fowler* and comparable decisions from other circuits supports the district court's application of claim preclusion here. Elbert unsuccessfully brought First and Fourth Amendment claims against Detective Gibbs in his first action based on the police raid of the country club on December 10, 2011. He now seeks to bring two new constitutional claims, under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, and a new state law claim alleging conversion, against Gibbs and the officers whom he asserts were co-perpetrators with Gibbs, all based on the same police raid on December 10, 2011.

There is no good reason why Elbert should have a second chance to add these claims and defendants. All of his claims arise out of the same police raid, and all of his new claims allege that Detective Gibbs, the defendant in the first action, and the sixteen police officers added in the second, acted together to violate his rights. Elbert could have brought the new claims against Gibbs in the first action and failed to do so. He could have joined the other police officers as defendants in the first action but failed to do so in a timely manner. As the district court explained, allowing Elbert to circumvent the district court's ruling on his untimely motion for leave to amend in the first action by bringing a second action against the new defendants would unreasonably burden the parties and the court: The "defendants, and [the district] court and staff expended an inordinate amount of judicial resources over a period of five years in the litigation of the prior action." R. Doc. 13, at 6. We uphold the district court's decision, because "[a]ny other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in [his] first action." *Ruple v. City of Vermillion*, 714 F.2d 860, 862 (8th Cir. 1983) (applying South Dakota law).

To be sure, *Taylor v. Sturgell* rejected claim preclusion against a nonparty plaintiff based on a notion that the nonparty received "virtual representation" by a different plaintiff in a first action. But *Taylor* involved different considerations than this case. A plaintiff who was not a party to a first action "generally has not had a

'full and fair opportunity to litigate' the claims and issues settled in that suit." 553 U.S. at 892. Elbert, of course, was a party and had ample opportunity to litigate his claims against Gibbs and the sixteen police officers in his first action; he simply failed to do so. The question here is not whether Elbert is entitled to the time-honored tradition of "his own day in court," *id*. at 893 (quoting *Richards*, 517 U.S. at 798), but whether he gets "a second bite at the apple." *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989) (citing *Gambocz*).

The judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree that Counts 1, 2, 3, 5, 8, and 9 in the second action were subject to dismissal in light of the district court's dismissal of nearly identical claims in the first action. But I would reverse the district court's judgment as to the claims Elbert—who has been proceeding pro se since filing the first action—sought to bring against the former Doe defendants in their individual capacities in Counts 4, 6, and 7.

At issue here is whether the former Doe defendants are in privity with any of the defendants served in the first action, for although Elbert tried to bring claims against the former Doe defendants in the first action, they were never made party to the action. Claim preclusion "is not ordinarily available" to individuals who were not party to the first action. Wright, Miller, & Cooper, <u>supra</u> § 4464.1. In <u>Taylor</u>, the Supreme Court reaffirmed the general rule against nonparty preclusion and outlined the rule's "discrete exceptions," which "apply in 'limited circumstances.'" 553 U.S. at 892–99 (quoting <u>Martin v. Wilks</u>, 490 U.S. 755, 762 n.2 (1989)). Claim preclusion may be applied against a nonparty who stipulates to be bound by a final judgment, who has a substantive legal relationship with a party to the judgment, who was adequately represented by someone with the same interests who was party to the first suit, who assumed control over the first suit, who is the designated representative or

agent for a party to the first suit, or when a special statutory scheme expressly allows for its application. Id. at 893–95. The opinions cited by the court applying claim preclusion in favor of nonparties concern factual scenarios that generally fit into one of these discrete exceptions. See Airframe Sys., 601 F.3d at 11 (successor-predecessor relationship); Mars, 58 F.3d at 619 (parent-subsidiary relationship); Lubrizol Corp., 871 F.2d at 1288–89 (principal-agent relationship); El San Juan Hotel, 841 F.2d at 10–11 (attorney-client relationship); Ruple, 714 F.2d at 862 (government-official relationship with "nearly identical" interests); Gambocz, 468 F.3d at 842 (co-conspirator relationship); Bruszewski, 181 F.2d at 422–23 (principal-agent relationship); cf. Richards, 517 U.S. at 802 (determining that an earlier judgment did not have preclusive effect because the plaintiffs in the second suit were not adequately represented by the plaintiffs in the first suit).

Fowler, 479 F.2d 338, also fits within Taylor's exceptions. There, the plaintiff brought several lawsuits against prison officials alleging that they had violated his constitutional rights by paroling, rather than releasing, him from prison and by failing to give him a hearing when his parole was revoked. The plaintiff's claims against the two new defendants, who were accused of participating in the same parole-related decisions, were precluded by the earlier actions. As I read Fowler, the new defendants shared the same interests as, and were adequately represented by, the defendants in the first action. Claim preclusion was therefore available to them despite their nonparty status.

But the former Doe defendants in this case do not fit within Taylor's exceptions. Elbert has sued each defendant in their individual capacities, and he alleges that individual defendants took discrete actions that violated his constitutional rights. This circuit has concluded that claim preclusion does not bar such claims. See Irving v. Dormire, 586 F.3d 645, 647 (8th Cir. 2009) (holding that claim preclusion did not bar individual-capacity claims against prison officials, one of whom had already defended the plaintiff's habeas petition in his official capacity); Headley v.

-10-

Bacon, 828 F.2d 1272, 1277–80 (8th Cir. 1987) (holding that claim preclusion did not bar individual-capacity claims against police officers because they were not in privity with the city that employed them); see also, e.g., Gallagher v. O'Connor, 664 F. App'x 565, 568 (7th Cir. 2016) (holding that claim preclusion did not bar individual-capacity claims against a police officer, because his interests were not represented by any of the defendants in previous lawsuits, as "he would have to pay any judgment against him out of his own pocket"); Beard v. O'Neal, 728 F.2d 894, 897 (7th Cir. 1984) ("We can discern no basis for holding that all F.B.I. agents and informants, sued individually for their own acts or inactions, are in privity for res judicata purposes."). From the record before the court, I cannot conclude that the former Doe defendants meet an exception to the general rule against nonparty preclusion.

The court concludes that the former Doe defendants are nevertheless in privity with the defendants in the first action. The Taylor court expressly declined to use the term "privity" when discussing the exceptions to the general rule because it "has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." Id. at 894 n.8. The court invokes "privity" in precisely that sense, holding that nonmutual claim preclusion applies even though the circumstances would not support a finding of privity as to the defendants who were not served in the first action. "[T]here is a price to be paid for this approach[, as b]ogus findings of privity may cloud reasoning as later courts confront real privity questions." Wright, Miller, & Cooper, supra, § 4464.1.

Encouraging plaintiffs to join as many defendants as possible in the first action is, according to Wright and Miller, the "*only* cogent argument in favor of nonmutual claim preclusion." Id. (emphasis added). It's a tempting argument here, where Elbert's lawsuits have resulted in drawn-out litigation of claims that have so far proven to be without merit. But as Wright and Miller caution, "claims that seem thin are deliberately protected against judicial impatience by a host of rules that should not

-11-

be subverted by equally thin preclusion reasoning." <u>Id.</u> That is the case here, where Elbert did not have "ample opportunity to litigate his claims," *ante* at 9, in the first action: He couldn't join the former Doe defendants initially because he didn't know their names; and later, the district court denied him leave to amend. I would conclude that Counts 4, 6, and 7 of Elbert's complaint were not barred by claim preclusion to the extent they are brought against the former Doe defendants in their individual capacities, and that their dismissal on that basis was erroneous.

—————————————————

-12-