# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 07-3096

———————

| | | |
|---|---|---|
| Yankton Sioux Tribe, a federally-recognized tribe of Indians, and its individual members; Glenn Drapeau, an individual member of the Yankton Sioux Tribe, | * * * * * | |
| | * | |
| Plaintiffs – Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| United States Department of Health and Human Services; United States Indian Health Service; Michael Leavitt, in his capacity as the United States Secretary of Health and Human Services, or his successor in office; Charles Grim, in his capacity as the Director of the United States Indian Health Service, or his successor in office; Donald Lee, in his capacity as Aberdeen Area Director of the United States Indian Health Service, or his successor or predecessor in office; Earl Cournoyer, in his capacity as the Wagner Service Unit Director of the United States Indian Health Service; John Doe, whose true name is unknown, in his or her official capacity, or his successor in office; Jane Doe, whose true name is unknown, in his or her official capacity, or her successor in office, | * * * * * * * * * * * * * * * * * * * * * * | Appeal from the United States District Court for the District of South Dakota. |
| | * | |
| Defendants – Appellees. | * | |

_____

Submitted: May 13, 2008
Filed: July 7, 2008

_____

Before WOLLMAN, MURPHY, and SMITH Circuit Judges.

_____

MURPHY, Circuit Judge.

The Yankton Sioux Tribe on behalf of its members and individual member Glenn Drapeau (collectively "the Tribe") brought this action to challenge the decision of the United States Indian Health Service (IHS) to close an emergency room at the Wagner IHS Health Care Facility (Wagner emergency room) and to convert it to an urgent care facility. IHS and the other defendants[1] moved to dismiss the Tribe's claims on the grounds of res judicata and for failure to state a claim. The district court[2] granted the motion, and the Tribe appeals. We affirm.

I.

In the early 1990s IHS made the decision to close the Wagner emergency room in Wagner, South Dakota and to open an urgent care facility in its place as part of a broader effort to provide more cost effective health care to the tribal community. One significant effect of the plan was that while the Wagner emergency room was open 24 hours every day of the week, the urgent care facility would be open only from 7 a.m.

---

[1]Defendants and now appellees are government agencies and officials responsible for the decision to close the emergency room, including IHS and the Department of Heath and Human Services (collectively referred to as "the government").

[2]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

to 11 p.m. and would be closed on Sundays and federal holidays. Ambulances and patients requiring emergency services not available at the urgent care facility would be referred directly to Wagner Community Memorial Hospital located a half mile from the Wagner IHS facility or to Sacred Heart Hospital in Yankton which is fifty six miles away.

In 1994 the Tribe and another individual member, Joyce Golus, sought judicial review under the Administrative Procedure Act of the decision of the IHS to close the Wagner emergency room, also raising Fifth Amendment due process and equal protection claims. See Yankton Sioux Tribe v. United States Dep't of Health & Human Servs., CIV 94-4073 (D.S.D.) (Yankton I). Following a bench trial the district court granted the Tribe a declaratory judgment that the defendants had not satisfied the requirements of 25 U.S.C. § 1631(b)(1) when making the decision to close the Wagner emergency room.

Section 1631(b)(1) governs the process by which the government decides to close IHS health care facilities. The government may not close an IHS facility until it has submitted an impact report to Congress at least one year before the proposed closure date. The report must examine various factors including accessibility and quality of alternative health care after the closure, cost effectiveness of the proposed closure, availability of funds to maintain existing levels of service, views of the tribes served by the facility, degree of use by the Indian population of the existing facility, and the distance between the facility proposed to be closed and the nearest alternative facility. See § 1631(b)(1)(A)–(G).

The district court issued a writ of mandamus directing defendants to comply with the statute's requirements and permanently enjoined IHS from closing the Wagner emergency room until Congress either took final action on the impact report or one year lapsed from the date of its submission. See Yankton Sioux Tribe v. United States Dep't of Health and Human Servs., 869 F. Supp. 760, 767 (D.S.D. 1994). The Tribe and Golus agreed that the district court need not rule on their

constitutional claims because they had received all of their requested relief. An appeal of the district court's decision was filed but was dismissed based on a stipulation of the parties.

In August 2003 the defendants in Yankton I moved to dissolve the permanent injunction. An impact report had been submitted to Congress in 1997 in accordance with § 1631(b)(1), but one year had passed without Congress acting on it. The Tribe opposed the motion, arguing that the defendants had not consulted with it regarding the emergency room closure as required by § 1631(b)(1)(E). Section 1631(b)(1)(E) requires an impact report to include "the views of the Indian tribes served by such hospital or facility." The district court concluded that the statute does not require a particular type of consultation with tribes, but only that the impact report include the "views of the Indian tribes." The defendants had conducted meetings with the Tribe to solicit its views and incorporated the minutes of those meetings into the impact report.[3] After determining that the impact report submitted to Congress satisfied § 1631(b)(1)(E) and that the defendants had complied with the mandates of the permanent injunction, the district court dissolved the injunction. See Yankton I, CIV 94-4073 (Memorandum Opinion and Order, Doc. 92 (D.S.D. March 23, 2004)). Neither the Tribe nor Golus appealed this order.

While the district court was considering the motion to dissolve the permanent injunction, the Tribe asked the court to rule on the constitutional claims initially raised by their suit but not resolved before the issuance of the permanent injunction. The district court pointed out that the case was closed and that it did not have continuing jurisdiction. See id. The Tribe did not attempt an appeal from this ruling.

---

[3]The minutes of the meeting made it clear that the Tribe was concerned about discrimination at Wagner Community Memorial Hospital, the closest alternative facility with an emergency room, and that it disagreed with IHS's decision to close the Wagner emergency room.

After the district court dissolved the permanent injunction, the Department of Health and Human Services (HHS) issued a new tribal consultation policy in January 2005 to "ensur[e] that access to critical health and human services is maximized [by federally recognized tribes and HHS engaging in] open, continuous, and meaningful consultation." The policy expressly states that "[n]othing in the Policy creates a right of action against the Department [HHS] for failure to comply with this policy."

In 2005 IHS commissioned a report by Sharpless Inc. Health Care Management Consulting (Sharpless) to conduct a final evaluation of the Wagner facility. The Sharpless report recognized there would be significant hardships to tribal members if the emergency room were closed, but nevertheless recommended partial closure of the Wagner emergency room by replacement with an urgent care facility. The report noted that "it could be forecasted that lives would certainly be lost" if the Wagner emergency room closed.

After the district court dissolved the permanent injunction in Yankton I, several proposed deadlines for closure of the Wagner emergency room passed without the facility being closed. On January 30, 2006 the Tribe and Drapeau filed an action seeking a temporary restraining order and injunctive relief to prevent the closure. See Yankton Sioux Tribe v. United States Dep't of Health and Human Servs., CIV 06-4022 (D.S.D.). That action was dismissed without prejudice after HHS informed the Tribe that the emergency room would remain open until the end of the fiscal year.

On September 28, 2006, two days before the Wagner emergency room was scheduled to close, appellants filed this action seeking mandamus, injunctive, and declaratory relief. They argued that the government failed to notify Congress of the impact of the closure of the Wagner emergency room as required by 25 U.S.C. § 1631(b)(1); failed to consult meaningfully with the Tribe as required by statute and the tribal consultation policy; violated the appellants' Fifth Amendment due process rights by failing to notify them of the closure or to give them an opportunity to be heard; improperly used the Tribe's IHS health care funds to pay for another tribe's

-5-

health care; and violated the trust responsibility of the federal government to tribal members.

The district court dismissed with prejudice all of appellants' claims as either barred by res judicata or for failure to state a claim. It held that res judicata barred the due process and lack of consultation claims, as well as their claim that the government failed to follow § 1631(b)(1) requirements, including the allegation that defendants were required by the statute to submit a new report every budget cycle.[4] The remaining allegations were dismissed for failure to state a claim, including the contention that defendants failed to consult as required by HHS's new tribal consultation policy, that defendants improperly used funds dedicated to the Wagner service unit for the benefit of another tribe, and that defendants violated their federal trust responsibility. See Yankton Sioux Tribe v. United States Dep't of Health and Human Servs., 496 F. Supp. 2d 1044 (D.S.D. 2007) (Yankton II). This appeal followed.

On appeal the Tribe and Drapeau argue that the district court erred in dismissing their claims. They contend that res judicata does not bar their claims because the decision to close the Wagner emergency did not comply with federal law, the continuing claims doctrine protects their claims from the effects of res judicata, and their constitutional claims arise from new violations of their rights to due process. As to the claims dismissed under Federal Rule of Civil Procedure 12(b)(6), appellants argue that they have valid claims that the government violated the tribal consultation policy, that IHS illegally shifted funds to another tribe which caused a budgetary crisis that forced the closure of the Wagner emergency room, and that the government violated the trust relationship between the federal government and the Tribe. The government responds that the district court properly dismissed these claims.

---

[4]Appellants' claim that defendants had not submitted the required reports for every budget cycle was also dismissed on another ground – for failure to state a claim.

II.

We review de novo the dismissal of a claim on the grounds of res judicata, Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 976 (8th Cir. 2001), or for failure to state a claim. Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008).

A.

Under res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). To establish that a claim is barred by res judicata a party must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir 1998).

The requirement that the first suit resulted in a final judgment on the merits is met here. There were two judgments in Yankton I: the grant of the permanent injunction and the dissolution of it. An appeal was taken from the grant of the permanent injunction but was dismissed pursuant to the parties' stipulation, rendering the injunction a final judgment on the merits. The later dissolution of the permanent injunction became the final judgment when the Tribe opted not to appeal the district court's decision to dissolve the injunction. There was thus a final judgment with respect to all issues that were or could have been raised in that action. See Lundquist, 238 F.3d at 977.

Appellants argue that there was not a final judgment on the merits of their constitutional claims because the district court never ruled on them. Parties are bound, however, "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have

been offered for that purpose." Comm'r v. Sunnen, 333 U.S. 591, 597 (1948), quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1876). Appellants asserted their constitutional claims in Yankton I to support the relief they sought in that action. The Yankton I court granted their requested relief on statutory grounds, finding it unnecessary to reach the constitutional claims. Yankton I, 869 F. Supp. at 767. If appellants were not satisfied with that disposition they should have pursued the matter at that time. Although an appeal was filed, the parties stipulated to its dismissal prior to this court ruling on the matter. The result was that the permanent injunction became a final judgment on the merits of the issues between the parties, thus satisfying the first requirement for res judicata. Since it is undisputed that the district court had proper jurisdiction, the second requirement is not at issue.

The third res judicata requirement is that both suits involve the same parties or those in privity with them. The Tribe was a party in Yankton I along with individual tribal member Golus, but appellant Drapeau was not. When a person was not a party to an earlier suit, that person generally "has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." Taylor v. Sturgell, 2008 WL 2368748, at *9 (U.S. June 12, 2008). There are several exceptions to this general rule, one of which is when the nonparty was "adequately represented by someone with the same interests who [wa]s a party" to the prior suit. Richards v. Jefferson County, Ala., 517 U.S. 793, 798 (1996), quoted in Taylor, 2008 WL 2368748, at *10.

Appellants contend that the interests of Drapeau were not adequately represented in Yankton I. The Supreme Court has established that a "party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned and (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Taylor, 2008 WL 2368748, at *13 (internal citations omitted). Adequate representation may sometimes require "notice of the original suit to the persons alleged to have been represented" but the Court has assumed without deciding that lack of notice could be overcome in certain situations. Id., citing Richards, 517 U.S. at 801.

In this case the interests asserted by the Yankton Sioux Tribe and its individual members in Yankton I and those asserted by Drapeau here are identical. In Yankton I the plaintiffs were described as "enrolled members of the Yankton Sioux Tribe who receive, or have received, free health benefits, including . . . emergency room services at the Wagner Service Unit." Yankton I, CIV 94-4073 (Amended Complaint, Doc. 17 ¶ V D.S.D. 1994). In this action, the complaint describes Drapeau as an enrolled member who, along with his spouse and children, receives free health care services from the Wagner service unit of the IHS including access to emergency room services. His interests in this action derive solely from his status as an individual member of the Yankton Sioux Tribe. Because the asserted interest in each action are completely aligned we find this element of adequate representation satisfied.

It is also clear that the Tribe understood itself to be acting in a representative capacity for the benefit of its individual members, including Drapeau, in Yankton I. See South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 168 (1999). The Yankton I complaint states that "[p]laintiff Yankton Sioux Tribe brings this complaint on its own behalf and on behalf of its individual members" for whose "health, safety and welfare" the Tribe is responsible. The Tribe clearly intended to represent its individual members in Yankton I and prosecuted that case accordingly. The second element of adequate representation is likewise met.

We find Drapeau, as an individual member of the Yankton Sioux Tribe, had at least constructive notice of the earlier litigation. The Yankton I complaint names the individual members of the Tribe as plaintiffs in that action, along with the Tribe itself and Golus. As an individual tribal member Drapeau was included in that group. We find his inclusion in the represented group sufficient to establish constructive notice here. Because the elements of adequate representation are all satisfied in the special circumstances of this case, we conclude that the third requirement of res judicata is met.

The fourth requirement of res judicata is that "both suits are based upon the same claims or causes of action." Costner, 153 F.3d at 673. We have determined that

"a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." Lane v. Peterson, 899 F.2d 737, 742 (8th Cir.), cert. denied 498 U.S. 823 (1990). Appellants contend that the Yankton II claims involve "a unique nucleus of new operative facts." Specifically, appellants point to the government's failure to adhere to the new tribal consultation policy and general failure to consult, the alleged misuse of funds intended for the Yankton Sioux Tribe's health care costs, new alleged violations of 25 U.S.C. § 1631(b)(1), and recent deprivations of their due process rights. The tribal consultation policy and misuse of funds arguments are irrelevant for the purposes of our res judicata analysis because the district court dismissed them for failure to state a claim, not as barred by res judicata; we examine those claims in the next section.

Appellants allege that new violations of § 1631(b)(1) have occurred which were not previously litigated. They first assert that each proposed closure date of the Wagner emergency room after the dissolution of the permanent injunction in Yankton I was a new closure decision requiring compliance with the mandates of § 1631(b)(1) and that each failure to comply was a new violation. We reject this argument. The record establishes that the decision to close the Wagner emergency room was made only once, prior to filing of the Yankton I suit in 1994. Each proposed closure deadline was part of the process intended to carry out the original decision, not a new decision to close the Wagner emergency room giving rise to new claims. Although IHS extensions and litigation have delayed the closure, the original closure decision was never withdrawn. Because the order dissolving the permanent injunction in Yankton I concluded that all § 1631(b)(1) requirements for closing an Indian health care facility had been satisfied, we find this claim barred by res judicata.

Appellants also argue that § 1631(b)(1) requires the submission of an impact report in each two year budgetary cycle until the facility in question is closed and that the government's failure to make those submissions was a new violation of that provision. Section 1631(b)(1) states that the Secretary of Health and Human Services shall submit to Congress "at least 1 year prior to the date such hospital or facility . . . is proposed to be closed an evaluation of the impact of such proposed closure." The

-10-

government submitted an impact report to Congress in accordance with this provision in 1997 and waited more than a year – until 2003 – before moving to dissolve the permanent injunction and proceeding with closure plans. Under appellants' theory several additional impact reports should have been submitted between the submission of the 1997 impact report and the dissolution of the permanent injunction in 2004, but appellants did not raise this issue when the government moved to dissolve the permanent injunction. This claim arose out of the same nucleus of operative facts and could have been raised in Yankton I but was not; it is therefore barred by res judicata.[5]

In their brief before this court appellants make a general allegation that the government failed "to adhere to [its] own consultation policies," but we observe that such an allegation was already brought forward in Yankton I. In response to that allegation the district court concluded that the report required by § 1631(b)(1) only had to include the "views of the Indian tribes served by" the health care facility selected for closure and that the impact report submitted in 1997 satisfied this requirement. Yankton I, CIV 94-4073 (Memorandum Opinion and Order, Doc. 92 at 4 (D.S.D. March 23, 2004)), quoting § 1631(b)(1)(E). Appellants now attempt to argue again that the government did not consult before deciding to close the Wagner emergency room, but the decision to close that facility was made prior to the Yankton I litigation and the district court determined there that the mandates of § 1631(b)(1) had been met. We conclude that this consultation claim arises out of the same nucleus of operative facts presented in Yankton I and is thus barred by res judicata.

Appellants next claim that the government violated their Fifth Amendment right to due process by not providing "notice and an opportunity to be heard prior to the taking of a property interest" in the services of the Wagner emergency room. Complaint ¶ 58(2)(a). In addition to arguing that the permanent injunction in Yankton I was not a final judgment on the merits of this claim, they contend that res judicata

---

[5]The district court found in the alternative that this allegation failed to state a claim. We agree with the district court's analysis on that point. See Yankton II, 496 F. Supp. 2d at 1057.

does not bar it because <u>Yankton I</u> involved a separate and unique set of operative facts than those present here.

The due process violation for which appellants sought redress in <u>Yankton I</u> was the allegedly unconstitutional taking of their property interest in the services of the Wagner emergency room; they allege the same wrong here. The decision to close this facility was made prior to the initiation of <u>Yankton I</u>. There has been no "new" closure decision subsequent to the dissolution of the permanent injunction to give rise to a new due process cause of action. Because the claim here arises out of the same nucleus of operative facts as present in that case, appellants' claim for an alleged taking of a property interest without due process of law is barred by res judicata.[6]

Appellants also contend that the government owed a continuing duty to submit updated impact reports to Congress and to prevent the denial of due process and that the continuing claims doctrine therefore saves their statutory and constitutional claims from the effect of res judicata. The Court of Claims and its successors have developed the continuing claims doctrine in applying the six year statute of limitations for actions against the United States. <u>See</u> 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); <u>see generally</u> <u>Friedman v. United States</u>, 310 F.2d 381, 384–85 (Ct. Cl. 1962), <u>cert. denied</u> 373 U.S. 932 (1963); <u>Apache Tribe of Mescalero Reservation v. United States</u>, 43 Fed. Cl. 155, 171–72 (1999) (citing to a 1993 order).

The continuing claims doctrine was initially employed to save claims involving

---

[6]The Tribe also claims a "new" constitutional violation which leaves its members in "imminent danger of being deprived of life without due process of law." The Tribe's appellate briefing does not make clear what action it contends violated this due process right. If it is now suggesting that the government's decision to close the Wagner emergency room violates appellants' due process right to life, that argument was not raised in the district court and has therefore been waived. <u>See</u> <u>Menz v. Procter & Gamble Health Care Plan</u>, 520 F.3d 865, 868 (8th Cir. 2008).

periodic payments by the government from time bars by treating each incorrect payment as a new breach. See Friedman, 310 F.2d at 384. The doctrine has since expanded so that when the government "owes a continuing duty, a new cause of action arises each time the government breaches that duty" so long as the breach occurred within the six year limitations period. Apache Tribe, 43 Fed. Cl. at 171. Appellants cite Apache Tribe, a case dealing with the government's duty to manage tribal resources on behalf of a tribe, for the proposition that this doctrine should prevent the application of res judicata in this case. The Court of Federal Claims ultimately determined, however, that the continuing claims doctrine was inapplicable in Apache Tribe, see 43 Fed Cl. at 165, and our review of case law shows that this doctrine has not been applied outside of the statute of limitations context. Nothing in Apache Tribe or other reported decisions supports the extension of this doctrine to prevent the application of res judicata here.

B.

The district court determined that appellants' remaining claims were not barred by res judicata but dismissed them for failure to state a claim under Rule 12(b)(6). When reviewing de novo a dismissal for failure to state a claim, we accept the claimant's allegations of fact as true and affirm only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008).

One of appellants' claims new to this action is its argument that the government's closure decision failed to comply with the requirements of a tribal consultation policy which only became effective on January 14, 2005. That policy expressly states, however, that "[n]othing in the Policy creates a right of action against the Department [HHS] for failure to comply with this Policy." Even if the policy were to establish an enforceable right, the decision to close the Wagner emergency room was made before the Yankton I litigation began in 1994. The planned closure resulted from the original decision rather than from a new one. The new consultation policy has no bearing on the decisionmaking process completed years before it went into

effect. For these reasons, the district court did not err by dismissing this claim for failure to state a claim pursuant to Rule 12(b)(6).

Appellants next claim not barred by res judicata is that the government arbitrarily and capriciously took funds from the Wagner Service Unit budget and used them for the benefit of the Santee Sioux Tribe. The Wagner Service Unit funds health care services for both the Yankton Sioux Tribe and the Santee Sioux Tribe. Appellants now argue that the Santee Sioux should have been assigned to the Winnebago Service Unit rather than the Wagner Service Unit. The Tribe asserts that the Wagner Service Unit's 2005 funding of facilities serving the Santee Sioux Tribe was an unlawful allocation of funds which caused a budgetary crisis leading to the decision to close the Wagner emergency room. The decision to close the Wagner emergency room was made prior to the onset of the Yankton I litigation, however. Because the alleged unlawful allocation of funds occurred more than a decade after the decision to close the Wagner emergency room was reached, it could not have affected the closure decision. Moreover, IHS assigned service of the Santee Sioux Tribe to the Wagner Service Unit rather than the Winnebago Service Unit over seventy years ago. The time to challenge that agency decision has long since passed. The district court properly dismissed this claim for failure to state a claim.

The Tribe's final claim not barred by res judicata is an asserted violation of the "special trust relationship between the Federal government and the Indians" in connection with the closure of the Wagner emergency room. It not disputed that a general trust relationship exists between the United States and Indian people, as for example when the federal government "takes on or has control or supervision over tribal monies or properties." United States v. Mitchell, 463 U.S. 206, 225 (1983) (citation omitted). The Tribe has not identified any assets taken over by the government such as tribally owned land, timber, or funds which would give rise to a special trust duty. See Mitchell, 463 U.S. at 225; see also Restatement (Third) of Trusts § 2, cmt. f (2003) (elements of a trust). Nor has it alleged violation of any statutory or treaty obligation that could be characterized as a breach of trust or fiduciary duty. The Tribe's vague allegation that the government violated its federal

trust responsibility is not sufficient to state a claim. The district court did not err in dismissing this allegation for failure to state a claim.

C.

Accordingly, we affirm the judgment of the district court.

_____