NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2016[*]
Decided October 31, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1594

| | |
|---|---|
| ROBERT GALLAGHER, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 C 7859 |
| NATHAN O'CONNOR and VILLAGE OF LYONS, ILLINOIS, <br> *Defendants-Appellees*. | Charles R. Norgle, *Judge*. |

**O R D E R**

Robert Gallagher appeals the dismissal of his suit under 42 U.S.C. § 1983 alleging that the Village of Lyons and one of its police officers, Officer Nathan O'Connor, violated his constitutional rights during an October 2013 arrest and subsequent criminal prosecution in state court. The district court concluded that "nonmutual claim preclusion" barred his suit because Gallagher previously sued other defendants for alleged violations stemming from the same events. But claim preclusion requires

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

mutuality of parties, and O'Connor and the Village were not in privity with the defendants whom Gallagher had sued. We affirm in part, vacate in part, and remand.

In his most recent complaint, Gallagher alleged that Officer O'Connor and the Village violated his constitutional rights when he was arrested at a gas station in October 2013. Gallagher stated that he was riding in a friend's car when O'Connor accelerated his car toward them, intending to cause a "T Bone Crash"—a broadside collision. Gallagher's friend swerved away from O'Connor and pulled into a gas station. Gallagher got out of the car to check if the tires were low on air and, finding no problem, switched places with his friend and began backing the car out of the station. He was blocked, however, by O'Connor, who had parked his car in the gas station's exit. O'Connor walked over and asked Gallagher to see his license and proof of insurance; Gallagher replied that these documents were in the trunk. Gallagher went to fetch the documents from the trunk but was assaulted by O'Connor, who twisted his arm and slammed him against the car. The result, Gallagher claimed, was a broken arm, "damage[]" to his "chest internal organs," and damage to his friend's vehicle. Gallagher was arrested and charged with trespassing and resisting a peace officer.

Gallagher also alleged that his constitutional rights were violated twice during his state criminal trial. At a November 2013 hearing, Gallagher asserted, O'Connor "attempted" to falsely arrest him, but he "defeated" this attempt. Then in December 2013, Gallagher complained that he was falsely arrested for arriving late to court.

After being convicted of resisting a peace officer but acquitted of trespassing, he filed this federal suit. He asserted claims against O'Connor for excessive force, malicious prosecution, falsely arresting him at the gas station, attempting to falsely arrest him at the state court hearing in November 2013, and falsely arresting him in December 2013 for failing to appear at the state court hearing. He also complained that the Village is liable for employing O'Connor and failing to train its police officers under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

These events had been the subject of three prior suits Gallagher had filed. In case 13 C 7891, he sued the gas station's manager for having him falsely arrested in October 2013, attempting to falsely arrest him at the state court hearing in November 2013, and intentionally inflicting emotional distress. The parties filed a joint stipulation to dismiss that suit. Second, in case 14 C 3801, he sued the gas station's manager along with the Office of the Cook County Public Defender (for negligence in connection with his state-court criminal proceedings), a state court judge (for having him falsely arrested for failing to appear at a hearing in December 2013), former Governor Patrick Quinn (for

negligence and for employing the Public Defender and the state-court judge), and the Cook County Sheriff (for inflicting cruel and unusual punishment and intentional infliction of emotional distress). The court dismissed that suit because Gallagher failed to serve former Governor Quinn and the state-court judge, as required by Federal Rule of Civil Procedure 4(m), and he failed to respond to motions to dismiss filed by the other defendants. In his third case, 14 C 3803, Gallagher sued the gas station's owner for the station manager's actions and for negligence, and an insurance company for concealing the ownership of the gas station. That suit was dismissed when Gallagher again failed to respond to a motion to dismiss.

Based on these prior lawsuits, O'Connor and the Village moved to dismiss the complaint on grounds of "nonmutual claim preclusion," which they characterized as "an expansion of the *res judicata* doctrine that abandons the mutuality requirement." This doctrine, they maintained, barred Gallagher's suit because they had a "close and significant relationship with the original defendants" and Gallagher was asserting the same claims against them that he had asserted in the prior suits.

The district court granted the defendants' motion and dismissed Gallagher's suit. The court understood the defendants to argue that they were indispensable parties whom Gallagher was required to join in his first suit, *see* FED. R. CIV. P. 19, and "nonmutual claim preclusion" therefore barred him from suing them here. According to the court, Officer O'Connor and the Village were in privity with the defendants in Gallagher's prior suits, given that the complaints in those suits were "rife with assertions" that O'Connor and the Village had conspired with the named defendants to deprive him of his constitutional rights. In addition, all of Gallagher's cases arose from the same set of operative facts. And each of the prior cases ended in a final judgment on the merits, the court said, including case 13 C 7891, in which Gallagher filed a stipulation of dismissal with prejudice, because a joint stipulation of dismissal with prejudice is given preclusive effect in later lawsuits.

On appeal, Gallagher challenges the district court's application of claim preclusion. He argues that O'Connor and the Village are not in privity with the defendants in his prior suits, and he maintains that this suit involves different claims—including claims of excessive force—than those in his other three cases.

Courts distinguish between two types of preclusion. Claim preclusion bars a subsequent lawsuit if the parties are identical to (or in privity with) the parties in the prior suit, a prior final judgment on the merits was entered in the first suit, and the two suits have identical claims. *Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014). Issue

preclusion, on the other hand, bars "refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). While the requirement that the parties be identical or in privity has been abandoned in the context of issue preclusion, it remains an essential part of this court's jurisprudence regarding claim preclusion in order to ensure that "each person [has] his or her own day in court." *Tice v. American Airlines, Inc.*, 162 F.3d 966, 972 (7th Cir. 1998); *see also Nevada v. United States*, 463 U.S. 110, 143 (1983). The minimum requirements for a nonparty to be adequately represented by a party in a prior suit are an alignment of interests between the nonparty and the representative, the party's understanding that it was acting in a representative capacity, and notice to the nonparty of the suit. *See Taylor v. Sturgell*, 553 U.S. 880, 900–01 (2008).

The district court erred when it concluded that Officer O'Connor and the Village were in privity with the defendants in Gallagher's other cases. Gallagher sued O'Connor in his individual capacity, *see Miller v. Smith*, 220 F.3d 491, 493–94 (7th Cir. 2000) (individual capacity suit exists when a plaintiff alleges tortious conduct of a person acting under color of state law and seeks monetary damages), and O'Connor's interests were not represented by any of the defendants in Gallagher's prior suits because he would have to pay any judgment against him out of his own pocket, *see Sterling v. United States*, 85 F.3d 1225, 1228 (7th Cir. 1996). Neither is the Village in privity with any of the defendants in Gallagher's other suits; no prior defendant was a Village official sued in his official capacity, *see Gray v. Lacke*, 885 F.2d 399, 405 (7th Cir. 1989) ("Suits against employees in their official capacities are essentially suits against the government entities for which they work."). The district court believed that Gallagher had to join O'Connor and the Village in his earlier suits, but plaintiffs may litigate separately against joint tortfeasors. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *Sterling*, 85 F.3d at 1228 (plaintiff not required to join the government in a prior action against government employee being sued in his individual capacity).

Issue preclusion also cannot apply here because the issues in this lawsuit were not previously litigated and determined in Gallagher's other suits. *See Firishchak v. Holder*, 636 F.3d 305, 308 (7th Cir. 2011) (issues must be actually litigated and determined in order to be given preclusive effect); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (Claim and issue preclusion "do not apply where, as here, the issues or causes of action sought to be precluded in a subsequent proceeding were allegedly determined in a stipulation or a judgment by consent." (internal quotation marks omitted)).

Because neither claim preclusion nor issue preclusion bars this suit, we turn to the merits of Gallagher's complaint and conclude that he stated two constitutional claims that should be allowed to proceed. First, he stated a claim of excessive force. As Gallagher alleged, Officer O'Connor broke his arm and slammed him against the car hard enough to harm his "chest internal organs" and dent the car. These allegations, if proven, could show that O'Connor used more force than necessary to arrest Gallagher at the gas station. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 685 (7th Cir. 2007).

Gallagher also stated a claim of malicious prosecution, though with regard only to the trespassing charge. Malicious prosecution is offense-specific in Illinois, *see Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013), and he asserted that the criminal proceeding terminated in his favor, was initiated against him without probable cause, with malice, and resulted in damages. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). On the other hand, Gallagher cannot state a claim of malicious prosecution in connection with the resisting arrest charge because he admitted that he was convicted of that charge. *See id.*

Gallagher's remaining allegations, however, fail to state a claim. Gallagher failed to state a claim against the Village for instituting a pattern or practice of failing to train its police officers under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). In order to state a claim against the Village for failure to train its officers, Gallagher needed to "plead[] factual content that allows the court to draw the reasonable inference" that the Village maintained a policy, custom, or practice of using excessive force, inadequately trained officers on the use of force, or was deliberately indifferent to the use of excessive force. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Gallagher does not contend that the Village has an express policy or that an individual with policymaking authority caused his injury, so he must allege "a common, unwritten practice put in place by the [Village] that nonetheless has the force of law." *League of Women Voters of Chi. v. City of Chicago*, 757 F.3d 722, 727–28 (7th Cir. 2014). He fails to do so. Rather his complaint merely describes the factual circumstances of his arrest and tacks on boilerplate allegations that trace the legal requirements of a *Monell* claim. He does not allege that a practice of using excessive force is common to the rest of the Village's police force or that excessive force has been used on other occasions in accordance with the supposed policy, *see id*. (recognizing three separate instances of aldermen relying on a new redistricting map prior to its implementation did not suffice to state a claim under *Monell*). Accordingly, Gallagher has failed to allege that the Village violated his constitutional rights.

To the extent that Gallagher complains that his arrest in October 2013 amounted to a false arrest, he pleaded himself out of court when he alleged facts reflecting that Officer O'Connor had probable cause to arrest him—probable cause being a complete defense to a false arrest claim. *See Williams*, 733 F.3d at 756. Gallagher's allegations that the gas station's manager complained to O'Connor about Gallagher's presence on the property and that he should have seen signs warning him not to enter the property would give O'Connor probable cause. *See* 720 ILCS 5/21-3(a)(3), (b); *United States v. Kincaid*, 212 F.3d 1025, 1029 (7th Cir. 2000) (A "No Trespassing" sign and prior interactions with the property owner established probable cause.).

Nor can Gallagher state a claim that he was falsely arrested in November 2013. He alleged that he "defeated" this attempt, and we understand this allegation to mean that he was not arrested at all. *See Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) (§ 1983 claim for a Fourth Amendment violation accrues at the time of the seizure). Similarly he cannot state a claim against O'Connor that he was falsely arrested in December 2013 because O'Connor was not involved in this arrest. Gallagher's brief clarifies that it was the state-court judge, not O'Connor, who "rearrested [him] by falsely claiming that he was an hour late to a court date." He also cannot maintain his claim against the Village for employing O'Connor because a municipality cannot be liable under § 1983 for employing a tortfeasor. *Monell*, 436 U.S. at 691; *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

We AFFIRM the judgment to the extent that Gallagher challenges the dismissal of his claims for false arrest and his claims against the Village. We VACATE the judgment to the extent Gallagher challenges the dismissal of his claims for excessive force and malicious prosecution against O'Connor, and we REMAND for further proceedings.