# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-4077

———————————————

Richard M. Elbert

*Plaintiff - Appellant*

v.

Gilbert Carter, Police Officer; Francis Collins, Police Officer; Andrew Dorothy, Sgt.; Erik Enderlin, Police Officer; Charles Evans, Police Officer; William Hooley, Police Officer; Caleb Lenz, Sgt.; Rebecca Mills, Sgt.; William Nauyok, Police Officer; James Manley, Police Officer; Christopher Onik, Police Officer; Jason Rusley, Police Officer; Marcus Smith, Police Officer; Alan Whaley, Police Officer; Alvin Brooks, Commissioner; Michael Rader, Commissioner; Angela Wasson-Hunt, Commissioner; Sly James, Commissioner; David Kenner, Secretary; Robert Richardson, Fire Marshall; Joe Williamson, Code Enforcement Manager

*Defendants - Appellees*

———————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

———————————

Submitted: August 4, 2017
Filed: May 1, 2018
[Unpublished]

———————————

Before COLLOTON, MURPHY, and KELLY, Circuit Judges.

———————————

KELLY, Circuit Judge.

Richard Elbert appeals the district court's dismissal of his 42 U.S.C. § 1983 action, and he seeks leave to proceed *in forma pauperis*. We grant Elbert leave to proceed *in forma pauperis* in this court; and upon careful de novo review, we affirm in part, reverse in part, and remand this case to the district court for further proceedings.

In April 2011, Elbert filed an action against the City of Kansas City, Missouri (City); various City employees, including Fire Marshal Robert Richardson and Health Inspector Joe Williamson; the Kansas City Police Department (KCPD); the Kansas City Board of Police Commissioners (Board); and various KCPD employees including Robert Gibbs and numerous John Doe police officers. Elbert v. City of Kansas City, Mo. (Elbert I), No. 4:11–cv–428–HFS (W.D. Mo. Apr. 22, 2011). In Elbert I, Elbert's complaint, as amended, alleged violations of state and federal law, and sought replevin.

Elbert operated the Kansas City Apollo Country Club (the Club) on property he leased in Kansas City, Missouri. The Club was a members-by-invitation-only, non-profit organization that collected dues to buy food and refreshments and to pay utilities and other expenses. Members received poker chips for their dues, which they could exchange for alcohol or food at the Club. Elbert never obtained an occupancy permit, had a fire inspection, obtained a City business license, paid earnings tax, or reported the earnings of the Club staff to the IRS or the City. After citizens complained about the Club's late hours and noise, officers and City employees investigated the disturbances, sale of alcohol and food without a license, reports of assaults and gunfire, and indication of drugs at the Club. Many of the Elbert I claims related to a no-knock search warrant that was executed on the premises of the Club on December 10, 2011.

After various defendants sought dismissal of Elbert's claims, the district court declined to exercise its supplemental jurisdiction over most of Elbert's state law claims, dismissing those claims without prejudice; and dismissed several of Elbert's constitutional claims for failure to state a claim. Thereafter, the remaining Elbert I defendants moved for summary judgment; in January 2016, the district court granted their motions, entered judgment in their favor, and dismissed the case with prejudice. This court affirmed the dismissal "for the reasons set forth in the district court's reasoned opinion, including the court's constitutional analyses . . . and its decision not to exercise supplemental jurisdiction over the remaining state law claims." Elbert v. City of Kansas City, Mo., 667 F. App'x 881, 882–83 (8th Cir. 2016) (unpublished per curiam opinion).

Meanwhile, in January 2015, Elbert had filed a second lawsuit in Missouri state court, again naming Richardson, Williamson, the KCPD, the Board, and Gibbs. Importantly, Elbert also named as defendants nine KCPD officers he had identified only as John Does in Elbert I (former Doe defendants). The defendants removed the action to federal court. Elbert v. City of Kansas City, Mo. (Elbert II), No. 4:15–cv–00532–HFS (W.D. Mo. July 15, 2015). The district court performed an initial review of Elbert's nine-count complaint, noting that Counts 1, 2, and 5 merely reasserted claims that had been dismissed for failure to state a claim in Elbert I, and dismissing those claims on that basis. The court further concluded that Count 3, which purported to assert a violation of Elbert's First Amendment right to freedom of assembly, was also subject to dismissal for failure to state a claim because Elbert had no generalized right of "social association," as the district court had found in Elbert I. The district court also dismissed Count 9, which sought replevin, noting that it had previously dismissed Elbert's replevin claim in Elbert I, and he did not allege he had since availed himself of available state remedies.

That left the following four claims in Elbert II. Count 4 asserted that Gibbs, Richardson, Williamson, and the former Doe defendants had violated his right to

equal protection by, inter alia, allowing other individuals to operate similar social clubs without government interference. Count 6 asserted a state-law conversion claim against Gibbs, Richardson, Williamson, and the former Doe defendants. In Count 7, Elbert alleged that Gibbs, Richardson, Williamson, and the former Doe defendants had deprived him of his property without due process. Count 8 alleged that Gibbs had negligently supervised the execution of the December 10, 2011, no-knock warrant. The district court stayed the proceedings as to these claims, pending this court's resolution of Elbert's appeal from the adverse judgment in Elbert I.

Shortly after this court affirmed the judgment in Elbert I, the Elbert II defendants sought dismissal of the remaining claims against them, arguing that the claims were barred by issue preclusion, otherwise known as collateral estoppel. More specifically, they contended that Elbert had already litigated—in Elbert I—the claims that remained pending in Elbert II; that the claims in both actions all arose out of the investigation of the Club and the December 10, 2011, execution of the no-knock warrant; and that this court had affirmed the district court's entry of judgment in favor of the Elbert I defendants.

The district court entered an order dismissing the remaining claims in Elbert II, concluding they were barred by claim preclusion, also known as res judicata. More specifically, the district court observed that Elbert was "attempting to again assert that, among other things, various city officials acted contrary to federal law when he was arrested for unlawful selling of liquor without a license. These questions ha[d] already been decided by [the district court in Elbert I] and affirmed by the Eighth Circuit." Mindful that the former Doe defendants had not been named as parties in Elbert I, the district court found that claim preclusion nevertheless applied to bar Elbert's new claims because the former Doe defendants were in privity with the Elbert I defendants. As such, the district court concluded that Elbert's

-4-

remaining claims in Elbert II were barred by claim preclusion, and dismissed Elbert II with prejudice.

We agree with the district court that Counts 1, 2, 3, 5, 8, and 9 in Elbert II were subject to dismissal in light of the district court's dismissal of nearly identical claims in Elbert I. We conclude, however, that under the facts and circumstances of this case, claim preclusion did not apply to bar the claims Elbert sought to bring against the former Doe defendants in their individual capacities in Counts 4, 6, and 7. See Yankton v. Sioux Tribe v. U.S. Dep't of Health and Human Servs., 533 F.3d 634, 641 (8th Cir. 2008) (claims that district court had dismissed for failure to state a claim were irrelevant to this court's claim preclusion analysis as to plaintiff's other claims).

We review de novo a district court's dismissal based on claim preclusion. Id. at 640. Claim preclusion is an affirmative defense, and it is ordinarily a defendant's burden to plead and prove such a defense. See Taylor v. Sturgell, 553 U.S. 880, 907 (2008). To establish claim preclusion, a party must show that "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity to them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998). Under claim preclusion "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Yankton, 533 F.3d at 639 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

At issue here is whether the former Doe defendants are in privity with any of the Elbert I defendants, specifically the KCPD police officers who were named in that action. Privity can be shown where a non-party to a previous lawsuit was adequately represented by someone with the same interests who was a party in the prior case. Taylor, 553 U.S. at 894–95. Defendants who were not parties to a previous action are in privity with prior defendants if the new defendants "are so closely related to the

[previous] defendants, and their interests are so nearly identical, that it is fair to treat them as the same parties for purposes of determining the preclusive effect of the [prior] judgment." Nw. Title Agency, Inc. v. Minnesota Dep't of Commerce, 685 F. App'x 503, 505 (8th Cir. 2017) (unpublished per curiam opinion) (quoting Ruple v. City of Vermillion, 71 F.2d 860, 862 (8th Cir. 1983)). The Supreme Court has explained that claim preclusion based on privity with a party in a prior action applies in "properly conducted class actions . . . and suits brought by trustees, guardians, and other fiduciaries." Taylor, 553 U.S. at 894–95. Similarly, this court has found privity where the plaintiff was an enrolled member of the Yankton Sioux Tribe, which had already sued the same defendant on behalf of its enrolled members in a lawsuit based on the same claims the plaintiff sought to bring in a new lawsuit. Yankton, 533 F.3d at 640–41.

In Headley v. Bacon, the plaintiff first brought a Title VII action against a city. 828 F.2d 1272, 1277 (8th Cir. 1987). Thereafter, the plaintiff sought to sue several police officers, who were employed by the same city, in their individual capacities in a civil rights action. This court held that claim preclusion did not bar the plaintiff's second lawsuit because the police officers were not in privity with the city, at least to the extent they were sued in their individual capacities. Id. at 1279–80. And in Irving v. Dormire, where a prison warden had defended the prisoner-plaintiff's habeas petition in his official capacity, we held that claim preclusion did not bar subsequent individual-capacity suits against the warden or any other prison official. 586 F.3d 645, 647 (8th Cir. 2009).

Similarly, the Seventh Circuit has held that a police officer was not in privity with defendants in previous lawsuits brought by the same plaintiff. Gallagher v. O'Connor, 664 F. App'x 565, 568 (7th Cir. 2016) (unpublished order). The court noted that the officer was sued in his individual capacity, recognized that he would be personally liable for any judgment against him, and declined to apply claim preclusion, even though the claims brought in each case had arisen from the same set

of operative facts. Id. at 567–68. The Seventh Circuit has applied the same reasoning to individual-capacity claims even where the defendants were employed by the same government agency. See Beard v. O'Neal, 728 F.2d 894, 897 (7th Cir. 1984) ("We can discern no basis for holding that all F.B.I. agents and informants, sued individually for their own acts or inactions, are in privity for res judicata purposes.").

From the record before us, we cannot conclude that the former Doe defendants are in privity with any of the Elbert I defendants such that claim preclusion operates to bar Elbert's individual-capacity claims against those defendants in Elbert II. See C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 763–64 (8th Cir. 2012) (claim preclusion can provide basis for dismissal if the defense is apparent from the face of the complaint, which includes public records, materials embraced by the complaint, and materials attached to the complaint). Notably, the KCPD officers in Elbert I were sued in their individual capacities; and the former Doe defendants are sued in their individual capacities in Elbert II. See Gallagher, 664 F. App'x at 568; Beard, 728 F.2d at 897. Because Elbert seeks to hold the former Doe defendants individually liable, it cannot be said that those defendants' interests are so closely related to the Elbert I defendants, or that their interests are so nearly identical, that it would be fair to treat them as the same parties. See Nw. Title, 685 F. App'x at 505; see also Headley, 828 F.2d at 1277 n.4 ("Privity does not exist merely because parties happen to be interested in the same question, or in proving or disproving the same state of facts." (citing Duncan v. Clements, 744 F.2d 48, 52 (8th Cir. 1984))).

In the absence of privity between the defendants in Elbert I and Elbert II, we conclude that Counts 4, 6, and 7 of Elbert's complaint were not barred by claim preclusion to the extent they are brought against the former Doe defendants in their individual capacities, and that their dismissal on that basis was erroneous. We therefore reverse the dismissal of Elbert's individual-capacity claims against the former Doe defendants set forth in Counts 4, 6, and 7, affirm the district court's dismissal order in all other respects, and remand this case to the district court to

determine in the first instance whether any of the remaining claims are subject to dismissal based on issue preclusion or any other basis.[1]

Accordingly, the motion for leave to proceed *in forma pauperis* is granted, the judgment is affirmed in part and reversed in part, and this case is remanded to the district court for further proceedings.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I conclude that the panel majority, in reversing part of the district court's judgment, errs by overlooking an aspect of the doctrine of claim preclusion that justifies the district court's ruling. I would affirm the judgment.

In a prior lawsuit, Richard Elbert brought several federal constitutional claims under 42 U.S.C. § 1983, alleging violations of the First and Fourth Amendments, as incorporated against the States, based on an episode at the Kansas City Apollo Country Club on December 10, 2011. The complaint alleged multiple federal claims against Detective Robert Gibbs of the Kansas City Police Department and one federal claim against Kansas City police officers named Cote and Johnson. The district court granted summary judgment for the defendants on all claims, and this court affirmed. *Elbert v. City of Kansas City*, 667 F. App'x 881 (8th Cir. 2016) (per curiam). During the prior lawsuit, Elbert also moved for leave to amend his complaint to bring claims against the same twenty-one police officers whom he sued in this action. The proposed amendment would have substituted the twenty-one officers for "John Doe"

---

[1] We express no opinion regarding the preclusive force of the district court's without-prejudice dismissal of the state-law claims in Elbert I. See Meng v. Schwartz, 305 F. Supp. 2d 49, 62–63 (D.D.C. 2004) (district court's decision not to exercise supplemental jurisdiction over plaintiff's state law claims was not a decision on the merits).

defendants named in the original complaint. The district court denied the motion for leave as untimely, and this court affirmed the denial. *Id*. at 883.

In this action, Elbert brought new federal and state law claims against Gibbs and the twenty-one other police officers, described as "former Doe defendants." The majority rules that the district court erred in dismissing the claims "against the former Doe defendants set forth in Counts 4, 6, and 7."

Those counts raise a question about what is known in the jargon of civil procedure as "nonmutual claim preclusion." The twenty-one police officers were not defendants in *Elbert I*, because the district court denied Elbert's untimely motion to add them as parties. Their invocation of claim preclusion against Elbert in this case is therefore "nonmutual."

The majority approaches this problem by asking whether the twenty-one new defendants are in "privity" with Detective Gibbs and police officers Cote and Johnson. The old and new defendants might not have the substantive legal relationships that would place them in "privity" in the traditional sense of the term, but that conclusion does not resolve this dispute. "[T]he term 'privity' . . . has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008). *See also Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) ("[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term."); *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950) (Goodrich, J., concurring) ("Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.").

-9-

After surveying the law in this area, Professor Cooper observed that the one "cogent argument in favor of nonmutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4464.1, at 702 (3d ed. 2017) (hereinafter Wright & Miller). This principle of federal common law has been accepted by courts of appeals for more than a half century. In *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972), the court ruled that claim preclusion barred a plaintiff, whose claim of civil conspiracy against one set of defendants in a first action was dismissed on the merits, from bringing a second action alleging the same conspiracy against additional defendants who were not parties to the first. Although the two sets of defendants were not in "privity" as the majority defines it here, the court in *Gambocz* reasoned that "the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action." *Id*. at 842. The court thus held the claim in the second action barred by claim preclusion and its 1950 precedent in *Bruszewski*, 181 F.2d 419.

This court applied the reasoning of *Gambocz* in *Fowler v. Wolff*, 479 F.2d 338 (8th Cir. 1973) (per curiam). There, a plaintiff brought a civil rights action alleging that three Nebraska officials violated his constitutional rights. The district court dismissed the action on the merits, discussing the plaintiff's claim that the defendants infringed his rights by paroling him from prison rather than releasing him outright. The plaintiff then brought a later action for damages against two of the same defendants and two different Nebraska officials. The later action alleged that the defendants violated the plaintiff's constitutional rights by paroling him rather than releasing him, and also by revoking his parole without a hearing. This court, citing *Gambocz*, affirmed the dismissal of the plaintiff's claims against the two new defendants, explaining that "the relationship of [the two new defendants] to the parties sued in the [previous] action is so close that their addition cannot change the fact that this present action is repetitious and barred by res judicata." *Id*. at 340.

Although the later action involved new individual defendants and, apparently, a new claim that was not discussed by the district court in the previous action, this court concluded that claim preclusion applied.

Since *Fowler*, other circuits have followed this approach and concurred with Professor Cooper's observation that "[t]he best probable outcome" is a "limited rule" that permits nonmutual claim preclusion "if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance." 18A Wright & Miller § 4464.1, at 709; *see Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988). The First Circuit, summarizing the authorities, explained that "claim preclusion applies if the new defendant is 'closely related to a defendant from the original action—who was not named in the previous law suit,' not merely when the two defendants are in privity." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) (quoting *Negron-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008)). These authorities reject the "contention that nonparty defendants to an initial action can invoke claim preclusion as a defense in a later suit only if they can show that the nonparty defendant was in privity with the initial defendant." *Id*.

The rationale of *Fowler* and comparable decisions from other circuits supports the district court's application of claim preclusion here. Elbert unsuccessfully brought First and Fourth Amendment claims against Detective Gibbs in his first action based on the police raid of the Club on December 10, 2011. He now seeks to bring two new constitutional claims, under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, and a new state law claim alleging conversion, against Gibbs and twenty-one officers whom he asserts were co-perpetrators with Gibbs, all based on the same police raid on December 10, 2011.

-11-

There is no good reason why Elbert should have a second chance to add these claims and defendants. All of his claims arise out of the same police raid, and all of his new claims allege that Detective Gibbs, the defendant in the first action, and the twenty-one police officers added in the second, acted together to violate his rights. Elbert could have brought the new claims against Gibbs in the first action and failed to do so. He could have joined the twenty-one police officers as defendants in the first action but failed to do so in a timely manner. As the district court explained, allowing Elbert to circumvent the district court's ruling on his untimely motion for leave to amend in the first action by bringing a second action against the new defendants would unreasonably burden the parties and the court: The "defendants, and [the district] court and staff expended an inordinate amount of judicial resources over a period of five years in the litigation of the prior action." R. Doc. 13, at 6. "Any other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in [his] first action." *Ruple v. City of Vermillion*, 714 F.2d 860, 862 (8th Cir. 1983) (applying South Dakota law).

To support its strict privity requirement, the majority relies on *Headley v. Bacon*, 828 F.2d 1272 (8th Cir. 1987) and *Irving v. Dormire*, 586 F.3d 645 (8th Cir. 2009). But *Headley* and *Irving* could not overrule *Fowler* and did not purport to do so. The claims and defendants in *Headley* and *Irving* did not have the sort of close relationship that warranted nonmutual claim preclusion in prior decisions from this court and other circuits. In both cases, the court focused on the rule that an earlier suit against a municipality or a defendant in his official capacity does not bar a subsequent suit against defendants in their individual capacities. *Headley*, 828 F.2d at 1279; *Irving*, 586 F.3d at 647. The court in *Headley* also explained that the interests of the new defendants "were divergent and in one case even adverse" to the defendants in the first action. *Id*. at 1277. This case does not present those situations.

To be sure, *Taylor v. Sturgell* rejected claim preclusion against a nonparty plaintiff based on a notion that the nonparty received "virtual representation" by a

-12-

different plaintiff in a first action. But *Taylor* involved different considerations than this case. A plaintiff who was not a party to a first action "generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." 553 U.S. at 892. Elbert, of course, was a party and had ample opportunity to litigate his claims against Gibbs and the twenty-one police officers in his first action; he simply failed to do so. The question here is not whether Elbert is entitled to the time-honored tradition of "his own day in court," *id.* at 893 (quoting *Richards*, 517 U.S. at 798), but whether he gets "a second bite at the apple." *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989) (citing *Gambocz*).

Courts and commentators have recognized the continuing vitality of nonmutual claim preclusion after *Taylor*. *See Airframe Sys.*, 601 F.3d at 17 n.8; 18A Wright & Miller § 4464.1, at 699-710; *Gonzalez v. Sepulveda*, No. C 13-1272, 2014 WL 4062742, at *4 (N.D. Cal. Aug. 15, 2014); *McCoy v. Blossom*, No. 09-cv-2146, 2014 WL 1120346, at *4 (W.D. La. Mar. 20, 2014). There is substantial support for a federal common law rule of preclusion in these circumstances, and I would affirm the judgment.

———————————————