# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 23-353 consolidated with CA 23-354

**J. CORY CORDOVA, M.D.**

**VERSUS**

**LAFAYETTE GENERAL HEALTH, INC., UNIVERSITY HOSPITALS & CLINICS, LAFAYETTE GENERAL MEDICAL CENTER, INC., AND KAREN CURRY, M.D.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20222976
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

## GUY E. BRADBERRY
## JUDGE

**********

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED AS AMENDED.**

**James H. Gibson**
**Stacy N. Kennedy**
**Gibson Law Partners, LLC**
**2448 Johnston Street**
**P.O. Box 52124**
**Lafayette, LA 70503**
**(337) 761-6023**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lafayette General Medical Center, Inc.**
    **Lafayette General Health System, Inc.**
    **University Hospital & Clinics, Inc.**

**Jennie Porche Pellegrin**
**Neuner Pate**
**One Petroleum Center**
**1001 West Pinhook Road, Suite 200**
**P.O. Drawer 52828**
**Lafayette, LA 70505-2828**
**(337) 237-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Karen Curry, M.D.**

**Christine M. Mire**
**2480 Youngsville Hwy, Suite C**
**Youngsville, LA 70592**
**(337) 573-7254**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **J. Cory Cordova, M.D.**

**BRADBERRY, Judge.**

Dr. J. Cory Cordova appeals a trial court judgment granting an exception of res judicata filed by Lafayette General Health System, Inc., University Hospital and Clinics, Inc., and Lafayette General Medical Center, Inc (the Lafayette General Defendants). Dr. Cordova filed two appeals relating to this matter. The second appeal involves sanctions awarded to the Lafayette General Defendants at a subsequent hearing and is docketed under number 23-354. At the request of the Lafayette General Defendants, the two cases were consolidated by order of this court on August 17, 2023. The issue in the present case centers around the release of information regarding substandard evaluations to third parties contained in Dr. Cordova's LSU Medical School residency file.

## FACTS

In 2017, Dr. Cordova began an internal medicine residency with LSU's residency training program at University Hospital & Clinics, Inc. At the time, Dr. Karen Curry was the program director of the LSU residency program. Dr. Cordova claims that he was placed on unwarranted probation and subject to a request for adverse action, in addition to information being placed in his file which was misleading, false, and inappropriate. He was non-renewed for the residency program.

### *Cordova* I

In 2019, Dr. Cordova filed suit against the Lafayette General Defendants in addition to Louisiana State University Agricultural & Mechanical College Board of Supervisors, Dr. Curry, LSU department head Dr. Nicholas Sells, and director of graduate medical education, Ms. Kristi Anderson (the LSU Defendants). The suit also included claims of legal malpractice against Christopher Johnston and the Gachassin Law Firm. Concerning the Lafayette General Defendants and the LSU

Defendants, Dr. Cordova alleged due process violations under the federal and state constitutions, in violation of 42 U.S.C. § 1983, breach of his residency contract, and the sabotaging of his efforts to apply to other residency programs by sending inappropriate and incomplete documentation regarding his disciplinary status and evaluations to two other programs.

Subsequently, the LSU Defendants moved the entire case to the United States District Court for the Western District of Louisiana based on subject matter jurisdiction. On October 24, 2019, the western district court dismissed with prejudice the contract claims against Dr. Anderson and dismissed without prejudice the contract claims against Dr. Curry and Dr. Sells, reserving Dr. Cordova's right to reinstate these two claims if he could allege either doctor exceeded their authority.

The LSU Defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment. The western district court issued a judgment dismissing with prejudice the claims relating to denial of procedural due process. The judgment dismissed with prejudice the claims relating to the denial of substantive due process regarding Dr. Sells and the LSU Board of Supervisors. The civil rights claim for denial of substantive due process based on dissemination of information to other residency programs regarding Dr. Anderson and Dr. Curry was dismissed without prejudice. The civil rights claim for denial of substantive due process against Dr. Curry and the breach of contract claim against the LSU Board of Supervisors survived.

The remaining LSU Defendants filed a motion for summary judgment. The Lafayette General Defendants also filed a motion for summary judgment. The western district court granted both motions for summary judgment and dismissed with prejudice all remaining claims against the LSU Defendants and the Lafayette

2

General Defendants.  Also, any previous claims as to any Defendant was also dismissed with prejudice.

In its ruling, the federal district court stated:

The fact that other doctors and nurses provided letters of recommendation supporting him [Dr. Cordova] and/or gave him positive reviews on different rotations does not create an issue of fact as to the accuracy or objectivity of any of the assessments involved or Curry's own professional judgment.  Moreover, this evidence shows that Cordova's non-renewal was the kind of academic/professional decision to which reviewing courts show great deference.

. . . . Cordova has failed to show anything more than a range of opinions regarding different areas of his competencies among the various medical professionals with whom he worked during his one-year term.  None of the evidence introduced, even when drawn in a light most favorable to him, meets the high bar of showing that Curry's assessment was so arbitrary and lacking in professional judgment as to shock the conscience.  Accordingly, he has failed to meet his burden on the qualified immunity defense of establishing a constitutional violation and the substantive due process claim against Curry must be dismissed.

*Cordova v. Louisiana State Agric.*, USDC No. 6:19-CV-1027 (W.D. La. 2020) (unpublished opinion).[1]  The western district court went on to hold that all its findings also applied to the Lafayette General Defendants.

Later, in a separate judgment, the western district court remanded the remaining legal malpractice claims against Mr. Johnston and the Gachassin Law Firm to the state district court since all other claims had been resolved.  The western district court judgment also entered a final judgment on its previous rulings. *Cordova v. Louisiana State Univ. Health Sci. Ctr.*, 6:19-CV-1027 (W.D. La. 2021) (unpublished opinion).[2]

Dr. Cordova appealed the judgment dismissing his claims against the LSU Defendants and the Lafayette General Defendants to the United States Court of

---

[1] 2020 WL 7413878
[2] 2021 WL 972738

Appeals for the Fifth Circuit. The Fifth Circuit ruled that Dr. Cordova did not timely appeal that judgment. *Cordova v. Louisiana State Univ. Agric.*, 21-30239 (5th Cir. 2022) (unpublished opinion).[3] The United States Supreme Court subsequently denied writs in the case. *In Re J. Cory Cordova*, 21-1280, __ U.S. __, 142 S.Ct. 2733 (2022) (unpublished opinion). On May 19, 2022, the judgment was issued as a final mandate by the Fifth Circuit.

## *Cordova* II

Subsequently, on June 8, 2022, Dr. Cordova filed a new petition in state district court seeking a declaratory judgment, an injunction, and damages alleging "repeated bad faith release of [Dr. Cordova's] confidential [and false information] information contained in his personnel filed maintained by the Lafayette General Defendants[.]" This time, Dr. Cordova named only Dr. Curry and the Lafayette General Defendants as defendants. The LSU Defendants were not named as defendants. Dr. Cordova claimed that since the original filing, Dr. Curry and the Lafayette General Defendants once again sent "misrepresentations and disclosure of unauthorized confidential information" contained in his file to the Mississippi State Board of Medical Licensure on June 10, 2021. His allegations against the Lafayette General Defendants rest on his assertion that Dr. Curry, the program director of the LSU residency program at the time Dr. Cordova was a resident, is an employee of the Lafayette General Defendants and that because the documents in LSU's possession are housed in the LSU offices in the Lafayette General Defendant's hospital, that the Lafayette General Defendants are responsible for the release of the information.

---

[3] 2022 WL 1102480

In addition to other exceptions, the Lafayette General Defendants filed a peremptory exception of res judicata on July 6, 2022. In response, Dr. Cordova filed a motion in the state district court to stay proceedings pending resolution of a Fed. Rule Civ.P. art. 60(b) motion it filed in the western district court seeking post-judgment relief. Dr. Cordova sought to have the western district court vacate its final judgment and set attorney fees. This motion was filed by Dr. Cordova on July 8, 2022, two days after the Lafayette General Defendants filed the exception of res judicata. On August 22, 2022, the state district court signed a judgment denying the motion to stay proceedings. The state district court also granted the Lafayette General Defendants' exception of no right of action regarding Dr. Cordova's request for a preliminary injunction against the release of the information in his file, finding that the western district court ruled that it was LSU and Dr. Curry who were in charge of releasing the information, not the Lafayette General Defendants. At this hearing, the state district court also ruled that Dr. Curry was not properly served. The action for declaratory judgment against the Lafayette General Defendants was not ruled on at this time.

The western district court denied Dr. Cordova's motion to vacate and awarded the LSU Defendants attorney fees due to "plaintiff's unreasonable attempts at continuing this litigation." *Cordova v. Louisiana State Univ. Agric.*, 6:19-CV-1027 (W.D. La. 2022) (unpublished opinion).[4] Following the western district court's denial of Dr. Cordova's Rule 60(b) motion, Dr. Cordova filed an amended petition in state district court on November 28, 2022. Dr. Cordova removed references in his original petition to the repeated release of the information going back to 2018.

---

[4] 2022 WL 3636407

5

A hearing on Dr. Curry's exception of no right of action was heard on December 12, 2022. The state district court granted Dr. Curry's exception because Dr. Curry was no longer the residency program director for LSU, so she was not the proper party to enjoin from releasing future disclosures of Dr. Cordova's information.

On December 14, 2022, after reviewing the documents previously produced by the Lafayette General Defendants pursuant to Dr. Cordova's request, the state district court issued rulings regarding the documents. The state district court then heard arguments regarding the Lafayette General Defendants' exception of res judicata at issue in this case.

In written reasons for ruling, the state district court noted:

> Although Plaintiff claims this instant Petition asserts a different cause of action against the Lafayette General defendants, the crux of the Petition is an on-going challenge to the action of Dr. Curry and LSU in placing of Plaintiff on probation during his first year residency, the filing of a Request for Adverse Action against Plaintiff, creating a substandard milestone evaluation noting deficiencies in Plaintiff's performance, and non-renewal of Plaintiff's participation in the residency program. The only difference is Plaintiff has omitted LSU as a defendant and now asserts a claim against Dr. Karen Curry individually and as an employee of the Lafayette General Defendants. Putting aside the fact that Dr. Curry has at all times asserted she is employed by LSU and was found to be so employed as a result of the federal litigation, the instant Petition re-alleges claims of "Dr. Curry's bad faith release of false information" including, once again, disputes to the contents of the Milestone Evaluation . . . and his placement on probation[.]

The state district court went on to note that the judgment in federal court was a final judgment when the Lafayette General Defendants filed their motion for res judicata. In discussing the res judicata effect of the federal court judgment, the district court ruled that:

> By dismissing the claim against Dr. Curry, [the federal court] found that the release of the information complained of by Plaintiff was not in bad faith and was properly based upon Plaintiff's record. While the instant suit may challenge the release of information to a new

6

inquiring agency, the content of the information does not change. Each incidence of a release of information about Plaintiff, upon proper request, does not give rise to a new cause of action. All evaluations of Plaintiff were made by Dr. Curry during Plaintiff's medical residency with LSU in 2017-2018. This suit alleges the same infringement of rights by the same wrong – being the actions of Dr. Curry in evaluation of Plaintiff in 2017-2018.

The state district court then sustained the Lafayette General Defendants' exception of res judicata. Dr. Cordova appealed the judgment of the state district court signed on January 30, 2023.

## RES JUDICATA

### Preliminary Matters

Dr. Cordova argues that the state district court should have required the Lafayette General Defendants to file another exception of res judicata in writing and brief the issues when he filed his amended petition. He further alleges that the state district court erred in failing to require the Lafayette General Defendants to meet their burden of proof in establishing that res judicata was applicable and incorrectly placing the initial burden of proof on him. Additionally, Dr. Cordova argues that he was not allowed to introduce relevant evidence at the proceedings.

We first note that nothing requires a party to file another exception to an amending petition when arguments on the exception have yet to be heard and the party has no additional arguments to raise in response to the amending petition that were not raised in the original filing of the exception of res judicata. Dr. Cordova has cited no law to the contrary. Louisiana Code of Civil Procedure Article 1152 (emphasis added) merely states that a defendant "**may** amend his peremptory exception [of res judicata] at any time and without leave of court, so as to either amplify an objection set forth or attempted to be set forth in the original exception, or to plead an objection not set forth therein." Therefore, the Lafayette General

7

Defendants could stand on the assertions in their original exception of res judicata, along with the seventeen attached exhibits.

Regarding the burden of proof when an exception of res judicata is pleaded, we agree with Dr. Cordova that the party pleading the exception of res judicata has the initial burden of proof. *Palermo v. Century Indem. Co.*, 17-825 (La.App. 3 Cir. 5/23/18), 248 So.3d 462. A review of the record establishes that the state district court placed the initial burden of proof of establishing the application of res judicata on the Lafayette General Defendants. As quoted in Dr. Cordova's own brief in support of this argument, the state district court, when speaking to Dr. Cordova's counsel, stated: "[Lafayette General's Counsel] has just made the argument that [the Western District Court judge's] determination in federal court are the same operative facts. Do you have any response to that?" Obviously, the Lafayette General Defendants made arguments first in support of its motion.

As far as the ability of Dr. Cordova to introduce evidence is concerned, "[t]he trial court is vested with vast discretion in connection with the admissibility of evidence. It will not be reversed absent an abuse of that discretion." *Thibodeaux v. Gulfgate Constr., LLC*, 18-676, p. 15 (La.App. 3 Cir. 3/7/19), 270 So.3d 721, 732; *Crooks v. State through Dep't of Nat. Res.*, 21-716 (La.App. 3 Cir. 5/29/22), 343 So.3d 248, *writ denied*, 22-1168 (La. 11/1/22), 349 So.3d 2.

At the December 12, 2022 hearing, a discussion was had regarding the Lafayette General Defendant's production of documents pursuant to Dr. Cordova's subpoena. It was agreed that the Lafayette General Defendants had produced documents they had in their possession, along with objections and responses, but Dr. Cordova argued that they were not in compliance because some items were missing, and parts of the evidence were marked out. The Lafayette General Defendants

explained they had removed numbers on tax returns and that some of the documents requested did not exist. The state district court recessed the hearing to examine the documents and reset the hearing on the exception of res judicata until December 14, 2022.

At the beginning of the of the December 14 hearing, the state district court ordered the Lafayette General Defendants to produce an affidavit certifying that the documents are a complete response; produce the requested bylaws pursuant to a nondisclosure agreement, to the extent they could be reconstituted as to the time Dr. Cordova was a resident; and un-redact a number on a tax return. The state district court then took the matter under advisement so it could review these documents before issuing its ruling.

Dr. Cordova has not specified what documents he was not allowed to introduce. Our review of the record indicates that the state district court made every effort to ensure that Dr. Cordova had all the evidence he asserted he needed. We find the state district court did not abuse its discretion in its ruling on the admissibility of evidence.

## Review of Sustaining Exception of Res Judicata

The parties disagree as to the standard this court should apply in reviewing the state district court's sustaining of the exception of res judicata. The Lafayette General Defendants argue that a manifest error standard of review applies because it was raised prior to the case being submitted, while Dr. Cordova asserts that a de novo review is the appropriate standard to be applied. We agree that manifest error is traditionally the standard of review. *Fogleman v. Meaux Surface Prot. Inc.*, 10-1210 (La.App. 3 Cir. 3/9/11), 58 So.3d 1057, *writ denied*, 11-712 (La. 5/27/11), 63 So.3d 995. However, the manifest error standard of review is applicable to questions

of fact and the res judicata effect of a prior judgment is a question of law which is reviewed de novo. *Id*. In the present case, the district court made no findings of fact, so we will conduct a de novo review to determine whether the state district court was legally correct in determining that the federal court judgment had the res judicata effect of barring Dr. Cordova's suit in the present case.

**Granting of Res Judicata Exception**

Dr. Cordova argues that the state district court erred in sustaining the Lafayette General Defendants' exception of res judication because this case presents a clear exception to the application of res judicata. He argues that the exception is not supported by the record.

"When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, it is the federal law of res judicata that must be applied." *Reeder v. Succession of Palmer*, 623 So.2d 1268, 1271 (La.1993), *cert. denied*, 510 U.S. 1165, 114 S.Ct. 1191 (1994); *Denton v. St. Landry Bank & Trust Co.*, 20-271 (La.App. 3 Cir. 12/23/20), 310 So.3d 722, *writ denied*, 21-104 (La. 3/9/21), 312 So.3d 586. "Under federal precepts, 'claim preclusion' or 'true res judicata' treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Reeder*, 623 So.2d at 1271.

This court in *Denton*, 310 So.3d at 727 (quoting *Green v. Iberia Parish Sch. Bd.,* 06-1060, p. 3 (La.App. 3 Cir. 12/20/06), 945 So.2d 940, *writ denied*, 07-111 (La. 3/16/07), 952 So.2d 697), recognized that federal law will bar a subsequent suit when four conditions are met: "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; 4) the same cause of action is at issue in both

cases." "Additionally, where the four elements of the res judicata test are met, we must also determine whether 'the previously unlitigated claim could or should have been brought in the earlier litigation'". *In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010) (quoting *D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989). This involves a two-step process: (1) whether, and to what extent, the party had actual or imputed awareness of the real potential for present asserted claims; and (2) whether the prior court possessed procedural mechanisms that would have allowed the party to assert such claims. *Id.*

In brief to this court, Dr. Cordova makes an argument only to the issue that this is a new cause of action, arguing that what he now asserts as a cause of action is an act by the Lafayette General Defendants that occurred after judgment in the federal court. However, we find all elements of federal res judicata have been established by the Lafayette General Defendants as discussed below.

**Same Parties**

In the present case, Dr. Cordova filed suit against Dr. Curry and the Lafayette General Defendants, contending that the Lafayette General Defendants employed Dr. Curry, who released the information in his residency file. He did not file suit against the LSU Defendants this time. He argues that the exact same parties must be involved in both suits.

It does not matter that all the same defendants were not named in the present state court suit as in the federal suit. The doctrine of res judicata apples regardless of whether the former action included parties that were not named in the subsequent action, or vice versa, as long as judgment in the first action was rendered on the merits, the cause of action was the same, and the party against whom the doctrine is asserted was a party to the former litigation. *Dreyfus v. First Nat. Bank of Chicago*,

11

424 F.2d 1171 (7th Cir. 1970), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64 (1970).  Both the Lafayette General Defendants and Dr. Cordova were parties in the first suit.  The Lafayette General Defendants can raise an exception of res judicata against a claim asserted by Dr. Cordova even though not all parties are named in the second suit.  All parties' interests regarding the exception of res judicata in the present lawsuit were represented in the previous lawsuit.  The Lafayette General Defendants have a right to assert res judicata as to any claim that Dr. Cordova previously litigated against them.

**Court of Competent Jurisdiction**

"There is no question that the federal court is a court of competent jurisdiction." *B.A. Kelly Land Co., LLC v. Aethon Unit BR LP,* 54,115, p. 14 (La.App. 2 Cir. 9/22/21), 327 So.3d 1071, 1078, *writ denied*, 21-1828 (La. 2/8/22), 332 So.3d 671.

**Final Judgment on the Merits**

"'It has become clear in the federal courts that res judicata ordinarily attaches to a final lower-court judgment even though an appeal has been taken and remains undecided.  18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4227 (3 ed. 2021 update)." *Id*. at 1078.  However, as previously noted, this case is final and was even appealed to the United States Supreme Court.

**Same Cause of Action**

In brief, Dr. Cordova argues the district court erred when it applied res judicata to a claim that did not exist until after the federal court remanded the case.  Dr. Cordova states that the actions he now complains of occurred after the previous final judgment.  He argues that the releases of information now concern his application to secure licensing as a doctor as opposed to his seeking a residency,

12

which was the case when the same information was previously released and at issue in the federal court.

The law requires Dr. Cordova to assert any pendent state law causes of action he had at the time of the proceedings in Cordova I in federal court. *Reeder*, 623 So.2d 1268.

In *B.A. Kelly Land Co.,* 327 So.3d at 1077-78 (internal citations omitted), a landowner filed suit in state court against an operator of a hydrocarbon well after filing suit in federal court. The landowner asserted the same claims in both suits. In applying the federal law of res judicata, the second circuit noted that:

> The phrase res judicata refers to the distinctive effects of a judgment separately characterized as claim preclusion and issue preclusion. Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Issue preclusion bars the relitigation of issues actually litigated, and essential to a judgment, in a prior litigation between the same parties. Under federal law, it is the facts surrounding the transaction or occurrence which operate to constitute a cause of action for purposes of res judicata, not the legal theory upon which a litigant relies.
>
> Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether relitigation of the claim raises the same issues as the earlier suit.

Application of res judicata for new harms that occur after a final federal court judgment "is not barred by res judicata to the extent it is not the same as any of the claims that were raised or could have been raised[.]" *Yankton Sioux Tribe v. U.S. Dept. of Health & Human Servs.*, 496 F.Supp.2d 1044, 1053 (D.S.D. 2007), *affirmed*, 533 F.3d 634 (8th Cir. 2008).

In a case like the present case, *Padanabhan v. Hulka*, 308 F.Supp.3d 484 (D. Mass. 2018), *affirmed*, ___ F.3d ___ (1st Cir. 2019), the plaintiff doctor sought declaratory and injunctive relief, in addition to other claims. The plaintiff's claims

13

arose from revocation of his medical privileges after the hospital board revoked them. The plaintiff had previously asserted claims for various torts, fraud, violations of Massachusetts state law and violations of his constitutional rights in the state court. The defendants filed a motion to dismiss, arguing that the plaintiff's claims were barred by the doctrine of claim preclusion. The plaintiff argued that the action he now filed involved a different claim than in the previous case.

In addressing whether the claims involved the same common nucleus of operative facts, the federal court applied Massachusetts state law which provides that asserting a different type of liability is not a different cause of action if it arises out of the same transaction. *Id.* The court then held that the two cases were based on the same transaction and sought redress for the same wrong and were barred by res judicata. *Id.*

Even though this was a release of the information in Dr. Cordova's file to a different entity after the proceedings in federal court, Dr. Cordova is still making the same claim complaining about the content of the information being sent out, arguing that information that is being released is false and inaccurate. Every action Dr. Cordova has filed arises out of the content of the information in his file, which content has not changed since suit was originally filed in Cordova I. The cause of action is the same. When the federal court litigated the issue surrounding the release of information in Dr. Cordova's file, the possibility that other entities may request the information in the future existed. We find that res judicata bars relitigation of the release of information in Dr. Cordova's file.

**Exceptional Circumstances**

Dr. Cordova also argues that exceptional circumstances exist in this case and that barring him from asserting his state court claim in this case based on res judicata

would not be fair or just. Dr. Cordova asserts that his claims were specifically

reserved when the federal court failed to exercise supplemental jurisdiction over the

state court claims, so that his present claims in state court were also reserved. He

specifically refers to the fact that the federal court refused to exercise jurisdiction of

the pending malpractice claim against Dr. Cordova's former attorney and remanded

it to the state district court.

> Under federal precepts, "claim preclusion" or "true res judicata" treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.

> . . . .

> [I]f a set of facts gives rise to a claim based on both state and federal law, and the plaintiff brings the action in a federal court which had "pendent" jurisdiction to hear the state cause of action, but the plaintiff fails or refuses to assert his state law claim, res judicata prevents him from subsequently asserting the state claim in a state court action, unless the federal court clearly would not have had jurisdiction to entertain the omitted state claim, or, having jurisdiction, clearly would have declined to exercise it as a matter of discretion. In cases of doubt, therefore, it is appropriate for the rules of res judicata to compel the plaintiff to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit.

*Reeder*, 623 So.2d at 1271-73 (citations omitted).

As noted by Dr. Cordova, there are exceptions when the law of res judicata

will not bar a subsequent action:

> Although rarely mentioned, exceptions exist to the common law theory of res judicata, as noted in the Restatement (Second) of

Judgments, § 26 (1982). These exceptions involve "exceptional circumstances" as where (a) the parties have agreed that the plaintiff may split his claim, or the defendant has acquiesced therein; (b) the court in the first action has expressly reserved the plaintiff's right to maintain the second action; (c) there are restrictions on the subject matter jurisdiction of the courts; (d) the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme; (e) for policy reasons; or (f) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. Restatement (Second) of Judgments, § 26 (1982), pg 233–234.4

*Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*, 95-654, 95-671, p. 13 (La. 1/16/96), 666 So.2d 624, 632 (footnote omitted).

The federal district court did not reserve any state law claims. It simply remanded the legal malpractice claim that Dr. Cordova had already asserted in his lawsuit in Cordova I.

Dr. Cordova's complaint has always been that alleged false information contained in his LSU file was being released to parties requesting information about his residency. Now that he is a licensed physician seeking licensure from state boards versus disclosures during his residency, Dr. Cordova is attempting to argue that the information is now being released for a different purpose. However, it still involves the release of the very same information.

When specifically addressing the claims against the Lafayette General Defendants, the federal district court addressed Dr. Cordova's claims surrounding communications with other programs. The federal district court found that Dr. Cordova made no showing of a significant reputational harm that functioned as a complete bar to his training and further stated:

> [H]e alleges that Curry sent negative evaluations to a program but does not contend that he was unable to continue his medical training as a result. Instead, his focus seems to be whether Curry intentionally misrepresented his evaluations. That is not the standard here and the new allegations present no basis for reopening the claim. Furthermore,

because Cordova has failed to come forth with any evidence of sufficient harm, the court will dismiss this claim with prejudice as to all defendants.

*Cordova v. Louisiana State Agric.*, USDC No. 6:19-CV-1027 (W.D. La. 2020)[5]

Dr. Cordova's arguments in brief also admit knowledge that a probable future release of information could occur when he argues that the Lafayette General Defendants were on notice of the potential for future claims due to the release of the information in his file. Furthermore, he was not deprived of bringing his claims in federal court. At the time Dr. Cordova asserted his claim in Cordova I, he could have sought declaratory relief to prevent the release of future information. This cause of action existed when Dr. Cordova first filed suit in 2019, complaining about the release of information in his residency file, which is the same complaint in the present case. We find no exceptional circumstances exist that prevent the application of res judicata to Dr. Cordova's claim against the Lafayette General Defendants.

## ANSWER TO APPEAL

The Lafayette General Defendants answered the appeal and ask that we award attorney fees and costs for defending a frivolous appeal pursuant to La.Code Civ.P. art. 2164.

Louisiana Code of Civil Procedure Article 2164 is penal in nature and is to be strictly construed. *Kitts v. State Farm Mut. Auto. Ins. Co.*, 21-566 (La.App. 3 Cir. 5/25/22), 340 So.3d 1281. Furthermore, damages for frivolous appeal will be awarded when a party is trying to delay an action, harass another party, or there is no reasonable factual or legal basis for the appeal. *Bandaries v. Cassidy*, 11-1267

---

[5] 2020 WL 7413878

(La.App. 3 Cir. 3/7/12), 86 So.3d 125, *writ denied*, 12-780 (La. 5/25/12), 90 So.3d 412.

Dr. Cordova continues to pursue this action trying to prevent the release of information in his LSU residency file. He also continues to fail in his pursuit. The federal court has denied him relief on multiple occasions and now the state district court denies him relief. As in *Bandaries*, we find that he has no other purpose than to harass the Defendants. We find that the Lafayette General Defendants are entitled to an award of damages for the filing of a frivolous appeal. Therefore, we award the Lafayette General Defendants $7,500.00 in attorney fees for work performed on this appeal.

For the above reasons, the judgment of the state district court sustaining the Lafayette General Defendants' exception of res judicata is affirmed. We amend the judgment and award an additional $7,500.00 in attorney fees. Costs of this appeal are assessed against Dr. J. Cory Cordova.

**AFFIRMED AS AMENDED.**